**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

```
_____
                               :
JOANNE TRAFTON,                :      Civil Action
        Plaintiff,             :      No. 09-4106(NLH)
                               :
     v.                        :      OPINION
                               :
CITY OF WOODBURY, et al.,      :
        Defendants.            :
_____:
```

**APPEARANCES:**
ANTHONY F. DIMENTO
ELKIND & DIMENTO
2090 EAST ROUTE 70
CHERRY HILL, NJ 08033
*Attorney for Plaintiff Joanne Trafton*

ALLAN E. RICHARDSON
LINDA A. GALELLA
RICHARDSON & GALELLA
142 EMERSON STREET
SUITE B
WOODBURY, NJ 08096
*Attorney for Defendants City of Woodbury, City of Woodbury Police Department and Officer Harold Holmstrom*

**HILLMAN, District Judge**

Plaintiff, Joanne Trafton, alleges Defendants City of Woodbury, City of Woodbury Police Department and Officer Harold Holmstrom violated her federal and state civil rights when Officer Holmstrom falsely arrested and injured her. In response to Plaintiff's claims, Defendants move for summary judgment. For the reasons expressed below, Defendants' Motion for Summary Judgment [Doc. 18] is granted in part and denied in part.

I.  **JURISDICTION**

Plaintiff has alleged several federal constitutional claims pursuant to 42 U.S.C. § 1983, as well as claims under the New Jersey Constitution and common law.  The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, and may exercise supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

II.  **BACKGROUND**

On the morning of July 5, 2007, Plaintiff, Joanne Trafton, deposited camera film at CVS Pharmacy (hereinafter "CVS") in Woodbury, New Jersey.  During development of the film, an employee of CVS noticed it contained several images (hereinafter "pictures" or "photographs") of two adolescent minors posing with various weaponry, including several guns and a crossbow.  This prompted the employee to notify his manager who, subsequently, phoned the Woodbury police.  An officer, not a party to this proceeding, arrived and examined the photographs.  Although he took no immediate action regarding the pictures, he requested that CVS notify him if someone attempted to retrieve the photographs.

Later that afternoon Plaintiff returned to CVS to pickup the pictures.  She approached the photo development processing counter and told an employee her name.  The employee then went to an office and notified the Woodbury police.  The officer that

initially handled the matter was unavailable and Defendant Harold
Holmstrom (hereinafter "Holmstrom"), a patrolman with the
Woodbury Police Department, was dispatched.  When he arrived at
CVS, an employee handed Defendant Holmstrom the pictures.[1]
Shortly thereafter, Defendant Holmstrom approached Plaintiff and
asked whether she had seen the photographs.  Plaintiff responded
she had not and that she could not wait to view them.  A
discussion then ensued among Defendant Holmstrom, Plaintiff and a
female CVS employee concerning the nature of the firearms in the
photographs.  Plaintiff contended she had not taken the pictures
and that the guns were not real but rather were her son's
paintball and BB guns.[2]  In an effort to demonstrate his
perception that the guns were real, Defendant Holmstrom remarked,

---

[1]  As evidence in support of their Motion for Summary
Judgment, Defendants submitted two compact discs.  One compact
disc contained a video recording, without audio, from a camera
located near the photo lab at CVS.  *See* Doc. 18-5, Exhibit G.
This camera captured part of the encounter between Plaintiff and
Defendant Holmstrom.  The second compact disc contained a video
recording with audio.  *See* Doc. 18-5, Exhibit F.  The video
originated from the camera in Defendant Holmstrom's police
vehicle and the audio from the camera's microphone attached to
his person.  Although the recording does not provide a video of
the entire event, it does provide audio for the entirety of the
encounter at CVS.  These recordings, as well as all other
evidence on record, were considered by the Court, in a light most
favorable to the nonmoving party, in the disposition of this
Motion.

[2]  Plaintiff admitted in her deposition that she
subsequently learned the guns were real.  She maintained,
however, that at the time of the encounter she believed the guns
depicted in the photographs were toys, not her husband's
firearms.

"I'd shoot him [Plaintiff's son].  I'm serious if he pulled that out [referring to a gun]." Doc. 18-5, Exhibit F.  Plaintiff ignored this comment and expressed disbelief that CVS called the police because of the content of the photographs.

As Defendant Holmstrom and Plaintiff viewed the photographs, a CVS employee explained the rationale for calling the police. The discussion then focused on a picture of Plaintiff's son holding a crossbow.  In reference to this photograph, Defendant Holmstrom remarked that possession of a crossbow is illegal in New Jersey.  Plaintiff replied that her husband had a permit for the weapon.  Defendant Holmstrom ignored this response and reiterated that crossbows are illegal in New Jersey.

At this point in the conversation, Plaintiff exhibited some hostility.  She exclaimed "this is ridiculous," to which Defendant Holmstrom replied, "this is ridiculous" that "you have this going on." Id.  Plaintiff then stated "what, my husband shoots guns all the time." Id.  In response, Defendant Holmstrom asked Plaintiff if "this is proper behavior," and Plaintiff replied "they are taking pictures of each other, what is the big deal." Id.  The hostility between Plaintiff and Defendant Holmstrom continued to grow.  Plaintiff again exclaimed "you are ridiculous" and told Defendant Holmstrom to "step away from me." Id.  Defendant Holmstrom then requested Plaintiff's name and she replied "no." Id.  In response, Defendant Holmstrom stated he

4

would call DYFS.

The order of the events that occurred shortly before and immediately after Defendant Holmstrom threatened to call DYFS is both exceedingly critical and disputed.[3]  Viewing the facts in a light most favorable to Plaintiff, for purposes of this Motion, the recordings indicate that Plaintiff "backed" away from Defendant Holmstrom in an effort to secure personal space, not as an attempt to leave CVS.[4]  In her effort to acquire personal space, Plaintiff walked several feet to the photo checkout counter and stopped.  At the photo checkout counter Defendant Holmstrom again requested identification.  Plaintiff refused,

---

[3]  For example, Plaintiff's deposition testimony was contradictory.  With respect to the events following Defendant Holmstrom's threat to call DYFS, Plaintiff stated that she "didn't actually walk way" from Defendant Holmstrom, rather "step[ped] away" and was then arrested. Doc. 19, Exhibit 2, Pl. Dep. 51.  This testimony is supported by the recordings.  At another point of her testimony, however, Plaintiff opined that after Defendant Holmstrom threatened to call DYFS, she "started walking away" and "as I was leaving [CVS], he [Defendant Holmstrom] said you're under arrest." Id. at 46-47.

[4]  On a Motion for Summary Judgment, the Court is mindful of its duty to interpret the facts in the light most favorable to the non-moving party.  Although the audio and video of the encounter are not contained on the same compact disc, through close analysis, it is possible to sync the recordings.  Prior to Plaintiff's statement for Defendant Holmstrom to "get away" from her, the female voice of a CVS employee is heard participating in the conversation.  When Defendant Holmstrom informs Plaintiff that he will call DYFS, the female employee's voice is no longer audible on the audio recording.  The termination of the female employee from the discussion corresponds with the appearance of Plaintiff and Defendant Holmstrom in the CVS surveillance video. In the video, Plaintiff, closely followed by Defendant Holmstrom, walks to and stops at the photo checkout counter.

indicating it was not in her possession.  Defendant Holmstrom
then requested Plaintiff's name.  Following her refusal to
disclose her name, Defendant Holmstrom informed Plaintiff he
would arrest her for hindrance.  In response, Plaintiff stated
"that is fine, arrest me." Doc. 18-5, Exhibit F.  Defendant
Holmstrom again reiterated that she would be arrested for
hindrance, to which Plaintiff again replied "arrest me." Id.
Defendant Holmstrom then told Plaintiff to put her hands behind
her back.  Plaintiff refused to comply and attempted to leave
CVS.[5]

Defendant Holmstrom physically prevented Plaintiff from
leaving CVS and reiterated that she was under arrest.  In the
process of preventing Plaintiff from leaving, she somehow fell to

---

[5]  In support of its restatement of the facts, the Court
relies upon its analysis of the recordings, as discussed in
footnote 4, and the testimony of CVS employee Joe McCormick
(hereinafter "McCormick").  Although Plaintiff seemingly admitted
she tried to leave CVS prior to Defendant Holmstrom's attempt to
place her under arrest, see footnote 3, the testimony of
McCormick and the Court's analysis of the video provide a
sufficient factual basis to conclude otherwise.  McCormick stated
that Plaintiff only walked away from Defendant Holmstrom after he
informed her that she was under arrest. Doc. 19-2 Exhibit 3, Tr.
29-30; Doc. 19-3, Exhibit 5, Dep. 34-35 (testifying that he
believed Plaintiff was arrested for not providing her
identification and that Defendant Holmstrom told Plaintiff she
was under arrest after she refused to provide her name and answer
his questions).  The recordings support McCormick's testimony.
As indicated in footnote 4, Plaintiff walked to the photo
checkout counter and stopped.  The conversation between Plaintiff
and Defendant Holmstrom then continued for approximately another
23 to 27 seconds before Plaintiff attempted to leave CVS and was
arrested.

the floor and a short struggle ensued.  Throughout this profanity laced struggle, Plaintiff maintained an extremely hostile attitude toward Defendant Holmstrom and yelled several times for him to "get away from me."[6] Id.  Plaintiff was eventually subdued and handcuffed.  Shortly thereafter, Plaintiff exclaimed that Defendant Holmstrom was "hurting my hands." Id.  Defendant Holmstrom ignored this comment and told Plaintiff to "relax." Id.  Immediately thereafter, Plaintiff again proceeded to verbally chastize Defendant Holmstrom.[7]  This behavior occurred in CVS and continued for essentially the entirety of the approximate three minute drive from CVS to the Woodbury Police station.[8]  Intermixed within Plaintiff's hostile and derogatory commentary were various claims that her hands hurt.[9]  Defendant Holmstrom

_____

[6]  For example, while continuously shouting that he would be sorry for his actions, Plaintiff repeatedly questioned Defendant Holmstrom's authority to effect the arrest.

[7]  Plaintiff continuously yelled some variant of several threats, which included that Defendant Holmstrom would lose his job, that she was going to sue him and that he was going to be in trouble for his actions.

[8]  As illustrative of this conduct, Plaintiff proceeded to question Defendant Holmstrom's authority to effectuate the arrest.  She shouted that he was "nuts" and "how dare you handcuff me." Doc. 18-5, Exhibit F.  When he responded that she was under arrest, she sarcastically replied "ya, okay buddy." Id.  Plaintiff also informed Defendant Holmstrom that she knew every officer on the police force and that her brother was a police officer.

[9]  After her initial statement concerning her hand pain, Plaintiff made approximately four additional comments regarding the pain in her hands and wrist.  While in CVS she stated to

ignored these claims.

Upon Plaintiff's arrival at the Woodbury police station, Defendant Holmstrom handcuffed her to a chair.  Although Plaintiff was only handcuffed for a five to ten minute period, her request for removal of the handcuffs was ignored.  In her deposition testimony, Plaintiff opined that the officers, including Defendant Holmstrom, ignored her five statements concerning her wrist pain and never checked the placement of the handcuffs.  Eventually the handcuffs were removed and Plaintiff was charged with three offenses, (1) obstructing the administration of law, in violation of NJSA 2C:29-1, (2) disorderly conduct, in violation of NJSA 2C:33-2(a) and (3) resisting arrest, in violation of NJSA 2C:29-2.

On July 16, 2007, Plaintiff received treatment for pain in her right wrist at the Orthopaedics at Woodbury.  After several visits over the course of two years, Plaintiff's treating physician concluded that her injury was permanent and that her continued pain was related to the handcuff incident with Defendant Holmstrom.  The only relief available to Plaintiff is an injection, every six months, in her wrist.

On April 16, 2008, Plaintiff pled guilty in the Gloucester

---

Defendant Holmstrom "how dare you hurt my fucking hands." Id.  In Defendant Holmstrom's police vehicle, she expressed twice that her hands "are freaking killing me" and once that her "wrist is killing me." Id.

County Municipal Court.[10]  On July 1, 2009, Plaintiff filed her

---

[10]   The record is unclear with respect to the specific offense to which Plaintiff pled guilty.  A review of her plea colloquy indicates Plaintiff pled guilty to obstruction.  *See* Doc. 156, Exhibit 3, Tr. 33
>    ("MR. CAMPO [Trafton's criminal defense attorney]: Miss Trafton will plead guilty to violation 2C:29-1A, obstruction-obstructing administration of the law.  I understand that the State will then move to dismiss the two remaining charges, resisting arrest and disorderly conduct.  THE COURT: Is that the State's motion?  MR. CHELL [prosecutor]: That is correct").

The colloquy itself provides further conformation.  Id. at 34-35
>    ("THE COURT . . . [a]re you pleading guilty to obstruction?  A [Trafton] Yes I am . . .  Q [The Court] did Officer Halstrom [sic] or another officer from the Woodbury Police Department ask you for your name, address and other information regarding his investigation?  A [Trafton] Yes.  Q [The Court] And did you tell him you would not provide that to him?  A [Trafton] Yes.  Q [The Court] And at one point when the Officer told you you were under arrest, did you walk way from the Officer, Ma'am?  . . .  A [Trafton] Yes").

In Plaintiff's deposition, however, both parties' counsel and Plaintiff believe she pled guilty to resisting arrest.  *See* Doc. 19, Exhibit 2, Pl. Dep. 156 ("Mr. DiMento: She [Plaintiff] pled guilty to resisting arrest.  Obstruction of justice . . . [t]hat charge was dismissed"); Id. at 157 ("Ms. Galella: Q: Your attorney showed me something during the break that appears to indicate that you pled guilty to resisting arrest").  The parties seemingly rely on the official documentation from the Gloucester County Municipal Court.  This document, signed by a judge, indicates Plaintiff pled guilty to resisting arrest.  *See* Doc. 18-6 at 25 (noting that (1) the adjudication for 2C:29-1A, the obstruction charge, was dismissal, (2) the adjudication for 2C:33-2A, the disorderly conduct charge, was dismissal and (3) the adjudication for 2C:29-2A(1), the resisting arrest charge, was guilty).  The Court is unable to explain this discrepancy.  Although the plea colloquy indicates Plaintiff pled guilty to obstruction, the official documentation from the Municipal Court indicates Plaintiff pled guilty to resisting arrest.  Therefore, in the face of this discrepancy, the Court will credit the Municipal Court's official documentation and conclude Plaintiff

Complaint in the Superior Court of New Jersey, Gloucester County. On August 12, 2009, Defendants removed this action to federal court. Approximately one year later, on September 29, 2010, Defendants moved for summary judgment. Plaintiff opposes entry of summary judgment.

## III. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence "is to be believed and all justifiable inferences are to

---

pled guilty to resisting arrest.

be drawn in his favor." <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (quoting <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp.</u>, 477 U.S. at 323.  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. <u>Id.</u>  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. <u>Anderson</u>, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

**B.  1983 Claims**

**1. Defendant City of Woodbury Police Department**

In her Complaint, Plaintiff names both the City of Woodbury (hereinafter "Woodbury") and the City of Woodbury Police Department as Defendants.  The Police Department, however, is not a proper defendant in this case.  For purposes of section 1983 liability, municipalities and its police departments are treated as a "single entity." <u>Bonenberger v. Plymouth Twp.</u>, 132 F.3d 20, 25 n.4 (3d Cir. 1997); *see* N.J.S.A. 40A:14-118 (declaring that New Jersey police departments are "an executive and enforcement

function of municipal government"). "[P]olice departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." <u>Padilla v. Twp. of Cherry Hill</u>, 110 F. App'x. 272, 278 (3d Cir. 2004) (citation and internal quotation marks omitted). Therefore, summary judgment will be entered in favor of Defendant City of Woodbury Police Department.

### 2. Defendant City of Woodbury

Plaintiff argues Defendant Woodbury failed to adequately train Defendant Holmstrom on how to properly utilize handcuffs. "When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 971 (3d Cir. 1996) (citing <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658 (1978)).

Accordingly, under Section 1983, a municipality may be liable for either its policy or custom:

> A government policy or custom can be established in two ways. Policy is made when a decisionmaker possessing final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, such practices of state officials are so permanently and well-settled as to virtually constitute law.

McTernan v. City of York Pennsylvania, 564 F.3d 636, 658 (3d Cir.
2009) (citations, internal quotation marks, and brackets
omitted).  "Custom requires proof of knowledge and acquiescence
by the decision-maker." Id.  Furthermore, "[a] plaintiff bears
the additional burden of proving that the municipal practice was
the proximate cause of the injuries suffered." Bielevicz v.
Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).  To do so, "a
plaintiff must demonstrate a 'plausible nexus' or 'affirmative
link' between the municipality's custom and the specific
deprivation of constitutional rights at issue." Id. (citations
omitted); see Moleski v. Cheltenham Twp., No. 01-4648, 2002 WL
32349132, at *13 (E.D. Pa. Apr. 30, 2002) ("In failure to train,
supervise, or investigate contexts, the casual link must connect
the deficient training, supervisory or investigatory programs and
the constitutional injury, otherwise it would 'open
municipalities to unprecedented liability under § 1983' and
subject them to 'de facto respondeat superior liability.'"
(quoting City of Canton v. Harris, 489 U.S. 378, 391-92 (1989))).
The issue of proximate causation is often reserved for the jury
"[a]s long as the casual link is not too tenuous." Bielevicz, 915
F.2d at 851.

        In the present matter, Plaintiff does not point to an
explicit or affirmative policy.  Instead, she alleges that
Defendant Woodbury failed to properly train its officers how to

identify whether a suspect is handcuffed too tightly and how to address a suspect's pleas for assistance regarding tightness of handcuffs.  To establish a Section 1983 cause of action against a city for failure to train its police officers, the plaintiff must show that the city was deliberately indifferent to the constitutional rights of its inhabitants. <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 637 (3d Cir. 1995); *see* <u>Tobin v. Badamo</u>, 78 F. App'x 217, 219 (3d Cir. 2003) ("A municipality may be held liable under section 1983 when its failure to supervise police officers reflects a policy of deliberate indifference to constitutional rights." (citations and internal quotation marks omitted)).

Plaintiff's Complaint does not assert a § 1983 claim against Defendant Woodbury.  None of the four counts of Plaintiff's Complaint allege that Defendant Woodbury failed to properly train Defendant Holmstrom.  Even if the Court ignored this deficiency, Plaintiff's claim against Defendant Woodbury would still be insufficient because Plaintiff failed to provide any evidence of a policy of deliberate indifference to constitutional rights.[11]

---

[11]  In order to bring a claim of failure to train, a plaintiff must: "(1) identify the deficiency; (2) prove that the deficiency caused the alleged constitutional violation; and (3) prove that the failure to remedy the deficiency reflected deliberate indifference on the part of the municipality." <u>Malignaggi v. County of Gloucester</u>, 855 F.Supp 74, 77 (D.N.J. 1994) (citing <u>City of Canton v. Harris</u>, 489 U.S. 378, 391 (1989); <u>Colburn v. Upper Darby Twp.</u>, 946 F.2d 1017 (3d Cir. 1991)).  Even if Plaintiff's Complaint could be construed as asserting a § 1983

14

The Court will, therefore, enter summary judgment on behalf of Defendant Woodbury.

### 3. Defendant Holmstrom

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must establish that (1) the conduct deprived him of his rights, privileges, or immunities secured by the Constitution or laws of

---

claim against Defendant Woodbury, Plaintiff has not provided any evidence to support any of these elements.  First, Plaintiff's only "proof" of the identity of the deficiency--failure to train the proper use of handcuffs--is her conclusory statement in her opposition brief that the police department's policy on handcuffing procedures is vague.  This policy states that "persons under arrest shall be handcuffed in the proper manner prior to being placed in a police vehicle." Doc. 18-6, Exhibit I, Sec. 4.2.  According to Plaintiff, the vagueness of the term "proper manner" afforded Defendant Holmstrom with absolute discretion, including utilization of excessive force, for handcuffing a suspect.  Second, even if Plaintiff was correct and the vagueness of the term "proper manner" was deficient, and accepting that the deficiency as a constitutional violation, Plaintiff failed to provide any evidence that Defendant Woodbury's failure to remedy the deficiency constituted deliberate indifference.  It is black letter law that in order to survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party, and it must do more than just rest upon mere allegations, general denials, or vague statements. <u>Saldana</u>, 260 F.3d at 232.

the United States and (2) the conduct challenged was committed by a person acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980); Shuman ex rel. Shertzer v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005).  Government officials, however, may assert a defense of qualified immunity. "'The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Montanez v. Thompson, 603 F.3d 243, 249-50 (3d Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 815 (2009)).  "Qualified immunity balances two important interests--the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson, 129 S. Ct. at 815 (2009).  This doctrine provides a government official immunity from suit rather than a mere defense from liability. Id.  A Court must undertake a two-step inquiry to determine the applicability of qualified immunity:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct

violated a clearly established constitutional right.[12]
Montanez, 603 F.3d at 250. "Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right." Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997). "Only if the plaintiff carries this initial burden must the defendant then demonstrate that no genuine issue of material fact remains as to the 'objective reasonableness' of the defendant's belief in the lawfulness of his actions." Id.  In determining whether a defendant is entitled to qualified immunity, the court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 129 S. Ct. at 818.  If the answer to either question is "no," the analysis may end there. See id. at 823 (finding that because the unlawfulness of the officers' conduct was not clearly established, the officers were entitled to qualified immunity, without having to answer the question of whether the officers violated the Plaintiff's

---

[12]  Although the aforementioned sequence of the qualified immunity analysis is often appropriate, it is not rigid and inflexible; rather, a court may exercise its discretion in deciding which of the two prongs should be addressed first in light of a case's particular circumstances. Montanez, 603 F.3d at 250 (quoting Pearson, 129 S. Ct. at 818).

constitutional rights).

Although Plaintiff's Complaint is not a model of clarity, the Court construes it to allege four claims, improper seizure, false arrest, abuse of process and excessive force.

## I. Improper Seizure and False Arrest Claims

Plaintiff alleges two claims related to her arrest.  First, she contends that the entire conversation between herself and Defendant Holmstrom was an unconstitutional seizure because she was not free to leave.  The Court will refer to this claim as an unlawful seizure.  Second, she opines that Defendant Holmstrom arrested her without probable cause.  The Court will refer to this as the false arrest claim.  In response, Defendant Holmstrom contends he had probable cause to arrest Plaintiff for several offenses, including (1) obstructing the administration of law, in violation of NJSA 2C:29-1, (2) disorderly conduct, in violation of NJSA 2C:33-2(a), (3) resisting arrest, in violation of NJSA 2C:29-2, (4) access by minors to loaded firearms, in violation of NJSA 2C:58-15 or (5) simple assault, in violation of NJSA 2C:12-1(a).

## a. Unlawful Seizure

Plaintiff claims the entire encounter with Defendant Holmstrom constituted a seizure because she was not free to leave.  The Fourth Amendment prohibits unreasonable seizures. U.S. Const. amend. IV.  However, not all interactions between

18

individuals and law enforcement officers involve seizures.
Florida v. Bostick, 501 U.S. 429, 434, (1991).  A seizure occurs
when a reasonable person believes he is not free to terminate a
police encounter. United States v. Mendenhall, 446 U.S. 544, 554
(1980).  "Only when the officer, by means of physical force or
show of authority, has in some way restrained the liberty of a
citizen may we conclude that a 'seizure' has occurred." Bostick,
501 U.S. at 434.  Therefore, mere questioning of a suspect by
police does not constitute a seizure. United States v. Drayton,
536 U.S. 194, 200 (2002) ("Law enforcement officers do not
violate the Fourth Amendment's prohibition of unreasonable
seizures merely by approaching individuals . . . in other public
places and putting questions to them if they are willing to
listen").

The determination of whether a police encounter arises to a
seizure requires consideration of the totality of the
circumstances surrounding the police encounter. U.S. v. Smith,
575 F.3d 308, 312 (3d Cir. 2009) (quoting Bostick, 501 U.S. at
439).  These details are even more relevant when the alleged
seizure was "effected through a 'show of authority.'" Id. at 313
(quoting in part California v. Hodari D., 499 U.S. 621, 628
(1991)).  The failure, however, of an individual to submit to
that show of police authority invalidates any potential seizure.
U.S. v. Valentine, 232 F.3d 350, 358 (3d Cir. 2000).

19

Consequently, "[t]he simple act of an assertion of authority by an officer is insufficient to transform an encounter into a seizure without actual submission on the part of the person allegedly seized." Smith, 575 F.3d at 313.  In these instances, where police do not unambiguously restrain individuals or "when an individual's submission to a show of governmental authority takes the form of passive acquiescence," courts utilize an objective test to determine if a seizure occurred. Id. (quoting Brendlin v. California, 551 U.S. 249 (2007)).  This test focuses on "whether the [totality of the] officer's words and actions" would convey to a reasonable person that "he was being ordered to restrict his movement." United States v. Brown, 448 F.3d 239, 245 (3d Cir. 2006) (quoting Hodari D., 499 U.S. at 628); see Mendenhall, 446 U.S. at 554 (indicating that some factors of a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled").

The totality of Defendant Holmstrom's actions, demeanor and attitude demonstrated a sufficient show of police authority as to constitute a seizure.  From the very inception of his questioning, Defendant Holmstrom displayed a confrontational

attitude.[13]  As Plaintiff viewed the photographs, Defendant
Holmstrom expressed his belief that the firearms depicted in them
were real, he stated "I'd shoot him [Plaintiff's son].  I'm
serious if he pulled that out [referring to a gun]." Doc. 18-5,
Exhibit F.  Whether a reasonable person would infer this comment
alone as suggestive of seizure is unclear.  At the very least,
however, Defendant Holmstrom's statement demonstrated a certain
hostility toward Plaintiff.

Defendant Holmstrom's accusatory tone of voice with respect
to the picture of Plaintiff's son holding a crossbow was further
evidence of a seizure.  After observing this photograph,
Defendant Holmstrom remarked that crossbows are illegal in New
Jersey.  Although this may be true, Defendant Holmstrom entirely
ignored Plaintiff's response that her husband had a permit for
the weapon.  He did not ask a follow up question requesting
additional details on the permit, nor did he ask whether he could
speak to her husband.  Rather, Defendant Holmstrom reiterated
that crossbows are illegal in New Jersey.  Based upon his
accusatory tone and failure to ask any follow up questions, a
reasonable person would believe she was suspected of a crime,

---

[13]  Plaintiff's behavior was equally hostile and
disrespectful.  From the very commencement of Defendant
Holmstrom's questioning, Plaintiff did not take him or the
situation seriously.  She maintained a very flippant attitude
throughout the encounter.  She repeatedly commented how
ridiculous Defendant Holmstrom's questions were and expressed
annoyance that CVS called the police.

illegal possession of a crossbow, and was compelled to submit to further questioning.

Defendant Holmstrom's belittling comments also provide evidence that the encounter constituted a seizure.  In reference to the photographs, Defendant Holmstrom remarked "this is ridiculous," "I can't believe you let this go on." Id.  He then challenged Plaintiff's parenting and questioned whether "this [a minor posing with firearms] is proper behavior." Id.  After Plaintiff's refusal to provide her name, Defendant Holmstrom threatened to call DYFS.  This challenge to an individual's parental decisions, especially when combined with the ultimatum of a phone call to DYFS, is indicative of a seizure.  A reasonable person would feel compelled to either defend herself or remain and respond to the questions.

Most significantly, Defendant Holmstrom's physical actions were suggestive of a seizure.  Shortly prior to her arrest, Plaintiff attempted to obtain personal space.  When Plaintiff walked several feet to the photo checkout counter, Defendant Holmstrom "kept coming" at her and followed her to the counter. Doc. 156, Exhibit 3, Pl. Dep. 40.  If a law enforcement officer follows and continues to question an individual, she would likely feel seized and not free to terminate the police encounter. Based upon the totality of his actions and the aforementioned attitude, comments and questioning, the Court concludes Defendant

Holmstrom's conduct was indicative of a seizure.  A reasonable person in Plaintiff's position would have felt compelled to answer his questions.

Although the Court concludes the encounter between Plaintiff and Defendant Holmstrom was a seizure, the brief detention may still be justified if Defendant Holmstrom possessed reasonable suspicion that criminal activity was afoot. *See* Illinois v. Wardlow, 528 U.S. 119, 123 (2000) ("[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot").  Reasonable suspicion is an "elusive concept," it requires that "the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Brown, 448 F.3d at 246 (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).  In determining whether an officer has a particularized and objective basis to suspect criminal activity, he may rely upon his specialized training and experiences to make "inferences from and deductions about the cumulative information available to them that might well elude an untrained person." Id. (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002) (internal quotation marks omitted)).  Ultimately, a reasonable officer must

articulate specific reasons to justify the detention.[14] *See*
Johnson v. Campbell, 332 F.3d 199, 206 (3d Cir. 2003) ("[S]ome
objective manifestation that [Johnson was], or [was] about to be,
engaged in criminal activity" (quoting Cortez, 449 U.S. at 417
(1981))).

Defendant Holmstrom possessed sufficient reasonable
suspicion of criminal activity to justify his brief detention of
Plaintiff.  Upon entering CVS, Defendant Holmstrom viewed several
photographs of minors posing with weaponry, including a crossbow.
No adults were depicted in the pictures.  At this moment
Defendant Holmstrom was aware that (1) possession of loaded
firearms by unsupervised minors was illegal and (2) possession of
a crossbow was illegal.  Simply viewing the photographs did not
dispel suspicion that the guns were loaded, the minors were
unsupervised or the owner of the crossbow did not possess a
permit.  In Defendant Holmstrom's opinion, Plaintiff, the
individual that attempted to retrieve the photos, was the most
logical person to question concerning the nature of the
activities depicted in the photographs.  Consequently, based upon
the pictures, Defendant Holmstrom possessed reasonable suspicion
of criminal activity when he initiated questioning of Plaintiff.

Plaintiff contends that even if Defendant Holmstrom

_____

[14]  Although in their briefing Defendants did not argue
Defendant Holmstrom had a reasonable suspicion to question
Plaintiff, the Court will address the issue *sua sponte*.

possessed reasonable suspicion of criminal activity, her statements dispelled the suspicion.  With respect to the crossbow, Plaintiff opines that she told Defendant Holmstrom it belonged to her husband and he had a permit.  Even if this statement was true, it alone, cannot eliminate reasonable suspicion.  When investigating potentially criminal activity, law enforcement officers are frequently told false statements in hopes of diverting suspicion.  If the Court were to conclude that a mere denial of criminal activity was sufficient to dispel reasonable suspicion, a law enforcement officer's ability to investigate criminal activity would be negatively effected.  Similarly, Plaintiff's statement that the guns depicted in the photographs were not real was not sufficient to displace Defendant Holmstrom's reasonable suspicion that unsupervised minors possessed loaded firearms.  Because neither of Plaintiff's statements eliminated his reasonable suspicion, Defendant Holmstrom's brief detention and questioning did not constitute an unreasonable seizure.[15]  The Court will, therefore, enter summary judgment in favor of Defendant Holmstrom on Plaintiff's unlawful seizure claim.

---

[15]  In reaching this conclusion, the Court specifically notes that the mere possession of firearms does not constitute sufficient reasonable suspicion as to justify an investigative detention. *See* United States v. Ubiles, 224 F.3d 213, 217 (3d Cir. 2000) (holding that an allegation that an individual possesses a firearm does not provide sufficient justification of reasonable suspicion for an officer to seize the individual).

### b. False Arrest

With respect to her second claim, Plaintiff contends she was arrested without probable cause.  An arrest without probable cause constitutes a false arrest. O'Connor v. City of Philadelphia, 233 Fed. Appx. 161, 164 (3d Cir. 2007).  In the Third Circuit it is well established that "in analyzing false arrest claims, a court to insulate a defendant from liability need only find that probable cause . . . existed as to any offense that could be charged under the circumstances." Johnson v. Knorr, 477 F.3d 75, 84-85 (3d Cir. 2007) (quoting Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994)).  The Court has defined probable cause as "facts and circumstances sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)); see Illinois v. Gates, 462 U.S. 213, 232 (1983) (probable cause "is a fluid concept-turning on the assessment of probabilities in particular factual context-not readily, or even usually, reduced to a neat set of legal rules").  Although probable cause "requires more than mere suspicion, the law recognizes that probable cause determinations have to be made on the spot under pressure and do not require the fine resolution of conflicting evidence that a reasonable doubt . . . standard demands." Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000)

26

(quoting in part Gerstein, 420 U.S. at 121).  To determine whether a law enforcement officer possessed sufficient probable cause to effectuate an arrest, courts analyze the totality of the circumstances. Kaltenbach, 204 F.3d at 436 (citing Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997)).

Defendant Holmstrom contends he had probable cause to arrest Plaintiff for (1) obstructing the administration of law, in violation of NJSA 2C:29-1, (2) disorderly conduct, in violation of NJSA 2C:33-2(a), (3) resisting arrest, in violation of NJSA 2C:29-2, (4) access by minors to loaded firearms, in violation of NJSA 2C:58-15 or (5) simple assault, in violation of NJSA 2C:12-1(a).  Although probable cause need only exist for any offense that could have been charged under the circumstances, the probable cause for offenses that occurred either during or after the arrest cannot provide the requisite probable cause as to justify the initial arrest. Groman, 47 F.3d at 635 ("In order for the police to have properly arrested [the plaintiff], they must have had probable cause on the aggravated assault or disorderly conduct charges.  This is because the resisting arrest charge could not have provided probable cause for the arrest ab initio"); see Smart v. Capelli, No. 07-955, 2008 WL 2478378, at * 6 fn. 5 (D.N.J. June 18, 2008) ("Although Plaintiff was also subsequently charged with resisting arrest and obstructing justice, because those charges relate to alleged conduct during

the arrest, it could not have provided probable cause for the arrest"). In other words, even if probable cause existed with respect to a crime that a suspect committed after or during his arrest, the probable cause for that crime cannot be used as *post hoc* probable cause for the initial arrest. The initial arrest still remains invalid.

The disorderly conduct, simple assault and resisting arrest charges all arose either during or after Plaintiff's arrest. Therefore, these offenses cannot provide justification for Plaintiff's initial arrest. Additionally, Defendant Holmstrom cannot rely upon the access by minors to loaded firearms charge because he did not have probable cause to know whether the firearms were loaded. Neither Plaintiff nor the photographs provided any evidence, let alone sufficient evidence to establish probable cause, that the guns were loaded. The Court is, therefore, only left to consider the obstructing the administration of law charge.

To determine whether probable cause existed, the Court must examine what the crime obstructing the administration of law entails. *See* Wright v. City of Philadelphia, 409 F.3d 595, 601 (3d Cir. 2005). ("To determine whether an arrest is valid, we look to the law of the state where the arrest took place"). Defendant Holmstrom contends Plaintiff violated this statute because she refused to provide him with her name and walked away.

28

The New Jersey Code provides:

> A person commits an offense if he purposely obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from lawfully performing an official function by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act. This section does not apply to failure to perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

N.J.S.A. 2C:29-1.  To arrest a plaintiff for obstruction, a law enforcement officer must possess probable cause that a suspect obstructed a public servant's lawful duties "by means of flight, intimidation, force, violence, or physical interference or obstacle, or by means of any independently unlawful act." Id.; New Jersey v. Camillo, 887 A.2d 1151, 1153 (N.J. Super. Ct. App. Div. 2005).  The New Jersey Superior Court has specifically opined that the refusal "to provide information [,such as a name,] the trooper required to complete his incident report . . . in the absence of physical interference" was not a violation of N.J.S.A. 2C:29-1.[16] Camilo, 887 A.2d at 1154.  With respect to

---

[16]  Although the New Jersey Supreme Court has not addressed whether an individual's refusal to provide his name constitutes obstruction, we predict that if it considers the issue it will conclude similarly.  An analysis of the relevant case law supports this proposition.  Courts that have found sufficient probable cause to substantiate an arrest for obstruction are essentially in universal agreement that obstruction requires more than a refusal to respond to an officer's questions.  Rather, a violation of N.J.S.A. 2C:29-1 requires that the individual either (1) commit an independent unlawful act or (2) physically interfere with a law enforcement officer's official duties. *See*

the "by means of flight" element, the New Jersey Superior Court

has recently held that "by means of flight" requires an attempt

to "leave the scene." <u>New Jersey v. Philpot</u>, 2010 WL 5128658, at

* 4-5 (N.J. Super. App. Div. Dec. 17, 2010) (finding the "by

means of flight" element lacking because the defendant started to

walk away, but stopped when the law enforcement officer told him

he was not free to leave); *see* <u>New Jersey v. Crawley</u>, 901 A.2d

924, 935-36 (N.J. 2006) ("We hold that a defendant may be

convicted of obstruction under N.J.S.A. 2C:29-1 when he flees

from an investigatory stop").  The Court agrees with this

construction of the statute.  If a suspect does not attempt to

leave the scene, he has not fled.

    The Court finds that disputed issues of material fact exist

as to when Plaintiff attempted to leave CVS and when Defendant

---

*e.g.,* <u>Young v. City of Wildwood</u>, 323 Fed.Appx. 99, 102 (3d Cir.
2009) (finding probable cause for obstruction when "it took four
attempts to obtain a clear set of [finger] prints from [the
defendant] because of his unwillingness to assist with the
process and because of his deliberate actions in swiping and
smearing his fingers on the card so that a clear print could not
be taken"), <u>United States v. Myers</u>, 700 F.Supp. 1358, 1364
(D.N.J. 1988) (holding that the defendant's "inconsistent" and
"evasive" answers did not constitute obstruction), <u>State v.
Hernandez</u>, 768 A.2d 1062, 1066 (N.J. Super. Ct. App. Div. 2001)
(finding that the defendant's refusal to depart from the area,
after being told to leave by a law enforcement officer, was
sufficient action as to constitute obstruction), <u>State v.
Perlstein</u>, 502 A.2d 81, 86 (N.J. Super. Ct. App. Div. 1985)
(concluding that an individual's refusal to produce her driver's
license and car registration constituted obstruction because her
actions were an independent unlawful act).

Holmstrom effected Plaintiff's arrest.  These issues preclude entry of summary judgment in Defendant Holmstrom's favor.[17] Viewing Plaintiff's version of the events in the light most favorable to her, the Court concludes (1) Plaintiff was under arrest when Defendant Holmstrom told her to place her hands behind her back and (2) she only attempted to leave CVS after she was arrested.

Defendant Holmstrom argues he had probable cause to arrest Plaintiff because she failed to provide him with her name and attempted to leave CVS.  The facts concerning when Plaintiff attempted to leave CVS, however, are disputed.  When the Court interprets the facts in a light most favorable to Plaintiff, they indicate Defendant Holmstrom arrested Plaintiff without probable cause.  Based upon the evidence on record a jury could reasonably conclude that approximately twenty or thirty seconds before her arrest, Plaintiff "backed" away from Defendant Holmstrom.  This movement was not an attempt to flee or depart CVS.  Rather, it was Plaintiff's attempt to secure personal space.[18]  After an

---

[17]  As noted in footnote 3, at her deposition, Plaintiff testified that she attempted to leave CVS after Defendant Holmstrom threatened to call DYFS.  As noted in footnote 5, however, the recordings and a witness's testimony indicate Plaintiff did not attempt to leave CVS until after Defendant Holmstrom's attempt to arrest her.

[18]  As a matter of law, the Court concludes that an attempt to achieve personal space does not constitute obstruction "by means of flight."  Plaintiff walked, not ran, several feet to the photo checkout counter and stopped.  This conduct was similar to

exchange at the photo checkout counter concerning her identification, Defendant Holmstrom again requested Plaintiff's name.  Following her refusal to disclose her name, Defendant Holmstrom informed Plaintiff he would arrest her for hindrance. After several more requests for her name, Defendant Holmstrom told Plaintiff to put her hands behind her back.  Plaintiff refused to comply and attempted to leave CVS.  If the jury credits the aforementioned facts, at the moment Defendant Holmstrom told Plaintiff to place her hands behind her back, his only justification for her arrest was her refusal to provide her name.  Because New Jersey law specifically holds that a suspect's refusal to provide her name does not constitute a violation of the obstruction statute, Defendant Holmstrom would not have probable cause to arrest Plaintiff.  If the jury, however, determines Plaintiff attempted to flee CVS <u>before</u> Defendant Holmstrom placed her under arrest, then Defendant Holmstrom would be entitled to qualified immunity.

The stark distinction between these two versions of events engenders a factual dispute which only the fact-finder may resolve.  Therefore, for purposes of summary judgment, the facts viewed in the light most favorable to Plaintiff, if accepted as

---

the defendant's in <u>Philpot</u>, where the defendant started to walk away but returned when he was informed that he was not free to terminate the encounter. <i>See</i> <u>Crawley</u>, 901 A.2d at 935-36 (holding that an individual is guilty of obstruction when he <u>flees</u> an investigatory detention).

true, are sufficient for the Court to conclude that Defendant
Holmstrom violated Plaintiff's Fourth Amendment right by
arresting her without probable cause.

A finding that a defendant violated a constitutional right
does not end the qualified immunity inquiry.  The Court must now
address the second prong of the analysis and determine whether
"'a reasonable officer could have believed that probable cause
existed to arrest' the plaintiff." Ciardiello v. Sexton, 390 Fed.
Appx. 193, 199 (3d Cir. 2010) (quoting Hunter v. Bryant, 502 U.S.
224, 228 (1991)).  "[P]robable cause to arrest exists when the
facts and circumstances within the arresting officer's knowledge
are sufficient in themselves to warrant a reasonable person to
believe that an offense has been or is being committed by the
person to be arrested." Id. (quoting Orsatti v. N.J. State
Police, 71 F.3d 480, 483 (3d Cir. 1995)).  In other words, a
defendant is entitled to qualified immunity if "there was any
reasonable basis to suppose there was probable cause." Frohner v.
City of Wildwood, No. 07-1174, 2008 WL 5102460, at * 6 (D.N.J.
Dec. 1, 2008) (quoting Gilles v. Davis, 427 F.3d 197, 205 (3d
Cir. 2005))

A mistake is not reasonable and would constitute a violation
of a clearly established right if "it would be clear to a
reasonable officer that his conduct was unlawful under the
circumstances of the case." Williams v. Atl. City Dep't of

Police, No. 08-4900, 2010 WL 2265215, at * 4 (D.N.J. June 2, 2010); see Kaltenbach, 204 F.3d at 437 ("The right the official is alleged to have violated must have been 'clearly established' in a . . . particularized . . . sense.  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent") (quoting in part Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  The Third Circuit has specifically opined that courts must examine the circumstances that the arresting officer confronts and compare it to the cases that found an absence of probable cause. Id. Qualified immunity is unavailable if "there are cases that would make it apparent to a reasonable officer in [defendant's] position that probable cause was lacking." Id.

Even though the determination of "whether an officer made a reasonable mistake of law, and is thus entitled to qualified immunity, is a question of law that is properly answered by the court, not a jury," the Third Circuit has recognized that a judge could "decide the objective reasonableness issue once all the historical facts are no longer in dispute." Curley v, Klem, 499 F.3d at 211 & n.12 (3d. Cir. 2007).  To do this, "[a] judge may

34

use special jury interrogatories, for instance, to permit the jury to resolve the disputed facts upon which the court can then determine, as a matter of law, the ultimate question of qualified immunity." Id.  In other words, "[w]hen the ultimate question of the objective reasonableness of an officer's behavior involves tightly intertwined issues of fact and law, it may be permissible to utilize a jury in an advisory capacity, . . . but responsibility for answering that ultimate question remains with the court." Id. (internal citation omitted).

Given the factual disparity concerning whether Plaintiff attempted to flee CVS before she was arrested, the Court cannot now address the second inquiry of the qualified immunity analysis.  The apparency of the constitutional violation at issue in this case to a reasonable police officer hinges on which version of events is accepted by the jury.  Should the jury find that Plaintiff only walked away from Defendant Holmstrom after he attempted to arrest her, then the unlawfulness of Defendant Holmstrom's actions may be readily apparent to an objectively reasonable police officer.  On the other hand, the jury may find other facts that would entitle Defendant Holmstrom to qualified immunity as a matter of law.  Accordingly, if and when the time arrives, the Court will employ special interrogatories, as necessary, to determine, as a matter of law, whether Defendant Holmstrom is shielded by qualified immunity.  On the present

record, however, and accepting Plaintiff's testimony as true, Defendant Holmstrom may have committed a constitutional violation by falsely arresting Plaintiff.  The Court cannot determine definitively whether qualified immunity should exonerate Defendant Holmstrom.  It, therefore, concludes that Plaintiff's Section 1983 false arrest claim against Defendant Holmstrom may proceed.

### ii. Abuse of Process

Plaintiff additionally alleges an abuse of process claim.

> A section 1983 claim for malicious abuse of process lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law. The crux of this action is the perversion of the legal process to achieve an objective other than its intended purpose. When process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the process, a cause of action for abuse of process can be maintained. To establish such a claim, there must be some proof of a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process.

Ference v. Twp. of Hamilton, 538 F. Supp.2d 785, 798 (D.N.J.2008) (citations, quotation marks, and brackets omitted).  In the present matter, Plaintiff has not demonstrated the malignant action or intent necessary to sustain her claim.  The Court will, therefore, enter summary judgment in favor of Defendant Holmstrom with respect to this claim.

### iii. Excessive Force

In her Complaint, Plaintiff avers Defendant Holmstrom

36

utilized excessive force when he effectuated her arrest.  The Court will interpret this averment as an allegation that Defendant Holmstrom utilized excessive force when he (1) handcuffed Plaintiff and (2) failed to respond to her repeated complaints that her hands hurt.  As a result of Defendant Holmstrom's actions, Plaintiff claims she suffered permanent damage to her right wrist.

A claim of excessive force requires that a plaintiff establish an unreasonable seizure. Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004).  In the current matter, the parties do not dispute whether Plaintiff was seized.  Thus, the only inquiry the Court must address is whether that seizure was reasonable.

In determining whether excessive force was used, the Fourth Amendment's "objective reasonableness" test is applied. Sharrar v. Felsing, 128 F.3d 810, 820-21 (3d Cir. 1997) (citing Graham v. Connor, 490 U.S. 386, 397 (1989)).  This test requires Courts to analyze the officer's actions "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." Kopec, 361 F.3d at 776 (quoting Graham, 490 U.S. at 397).  To ascertain whether the officer's actions were objectively reasonable, the test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of

37

the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Sharrar</u>, 128 F.3d at 821 (quoting <u>Graham</u>, 490 U.S. at 396).  "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." <u>Id.</u> at 822.

In evaluating the proper test for objective reasonableness, the Supreme Court has provided that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." <u>Graham</u>, 490 U.S. at 396 (internal citation and quotation marks omitted).  Rather, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments –– in circumstances that are tense, uncertain, and rapidly evolving –– about the amount of force that is necessary in a particular situation." <u>Id.</u>

In <u>Cincerella v. Egg Harbor Tp. Police Dept.</u>, a court in this district noted several factors the Third Circuit found relevant in determining whether a plaintiff's treatment after handcuffing constituted excessive force.  These factors included:

> the intensity of the plaintiff's pain, the officer's
> awareness of the plaintiff's pain, whether the

> plaintiff asked to have the handcuffs removed and how
> long after those requests the handcuffs are removed,
> whether there were circumstances justifying a delay in
> removing the handcuffs, and the severity of the injury
> the plaintiff suffered

Cincerella v. Egg Harbor Twp. Police Dept., No. 06-1183, 2009 WL
792489, at * 10 (D.N.J. March 23, 2009) (citing Gilles v. Davis,
427 F.3d at 207-08 and Kopec, 361 F.3d at 777).

As an initial matter, the Court concludes Defendant
Holmstrom's initial decision to handcuff Plaintiff did not
constitute excessive force.  He handcuffed her in the course of
effecting the arrest.  This decision was objectively reasonable
because not only was Plaintiff resisting arrest, but was also
shouting profanities and generally causing a disturbance at CVS.
To resolve whether Defendant Holmstrom's failure to respond to
Plaintiff's requests to loosen the handcuffs constituted
excessive force, the Court will divide its analysis of the
reasonableness of Defendant Holmstrom's conduct into pre-arrival
and post-arrival at the Woodbury Police Station.

### I. Pre-arrival to Woodbury Police Station

Plaintiff contends that throughout the period she was
handcuffed in CVS and the drive to the Woodbury Police Station,
Defendant Holmstrom ignored her repeated statements that the
handcuffs were hurting her hands.  Additionally, after sustaining
the alleged injury Plaintiff sought medical treatment.  Although
these facts could certainly indicate evidence of excessive force,

39

the Court cannot view Plaintiff's statements in a vacuum. Rather, in determining whether Defendant Holmstrom's actions were objectively reasonable, the Court must analyze Plaintiff's claims in context of the totality of the circumstances.  The record, when viewed in its totality, does not support a finding that, prior to Plaintiff's arrival at the Woodbury Police Station, Defendant Holmstrom acted unreasonably.  The evidence, viewed in a light most favorable to Plaintiff, clearly indicates that the circumstances surrounding her arrest were not benign. *See* Wade v. Colaner, No. 06-3715, 2010 WL 1490590, at * 2 (D.N.J. April 13, 2010) ("[T]he Court will not draw inferences in Plaintiff's favor that are inconsistent with the events depicted in the videotape which captures the events giving rise to Plaintiff's excessive force claim") (citing Scott v. Harris, 550 U.S. 372, 380-81 (2007).  When Defendant Holmstrom attempted to arrest Plaintiff, she responded with hostility.  After attempting to leave CVS and bumping into Defendant Holmstrom several times, Plaintiff fell to the ground.  During a profanity laced struggle, Plaintiff exhibited very boisterous, threatening and disorderly behavior. This conduct did not improve when she was finally secured in handcuffs.  In CVS and during the drive to the police station, Plaintiff repeatedly threatened Defendant Holmstrom's job, informed him that he would be sorry for his actions and

questioned his sanity[19] and authority to arrest her.

Based upon Plaintiff's interactions with Defendant Holmstrom, his decision to ignore her repeated complaints of hand pain was not objectively unreasonable.  Plaintiff did not calmly inform Defendant Holmstrom of the pain in her hands.  Instead, her only statements concerning the pain were intermittent comments infused into profanity laced threats and rants.  Even in one of her initial comments concerning the pain, Plaintiff exclaimed to Defendant Holmstrom "how dare you hurt my <u>fucking</u> hands" (emphasis added). Doc. 18-5, Exhibit F.  Analyzing her conduct and comments, it was reasonable for Defendant Holmstrom to ignore her statements and conclude that her complaints were potentially a ploy to get the handcuffs removed.

Defendant Holmstrom may reasonably have believed Plaintiff's statements were another form of resisting arrest.  This belief is further justified by Plaintiff's question, in the police car, to Defendant Holmstrom, "how dare you handcuff me" and her very sarcastic retort, "ya, okay," to his response that she was under arrest.  Her response may have indicated Plaintiff was still actively resisting arrest, at minimum, however, it meant Plaintiff did not accept that she was under arrest.  Furthermore, Defendant Holmstrom could reasonably infer from Plaintiff's conduct that if he attempted to either loosen or remove the

---

[19]  Plaintiff called Defendant Holmstrom "nuts."

41

handcuffs, she would flee or react violently.  Consequently, with the knowledge that the Woodbury Police Station was only a short three minute drive from the CVS, and that Plaintiff's behavior was outlandish, it was reasonable for Defendant Holmstrom to, for the time being, ignore Plaintiff's complaints.  The Court, therefore, concludes that Defendant Holmstrom's actions, prior to Plaintiff's arrival at the Woodbury Police Station, were objectively reasonable.

### ii. Post-arrival to Woodbury Police Station

With respect to Defendant Holmstrom's conduct after Plaintiff's arrival to the Woodbury Police Station, the Court concludes that a dispute of material fact prevents it from entering summary judgment in behalf of Defendant Holmstrom.  At the Woodbury Police Station, Plaintiff alleges that she remained handcuffed to a chair for approximately five to ten minutes and throughout this time pleaded with Defendant Holmstrom to "please take these [handcuffs] off, they [my hands] hurt." Doc. 19, Exhibit 2, Pl. Dep. 75.  In rebuttal, Defendant Holmstrom testified that he did not recall Plaintiff specifically requesting to have her handcuffs removed.  Other than a sour attitude, the record is void of any facts concerning whether Plaintiff possessed a specially violent or dangerous threat to the police or exhibited hostility similar to her demeanor at CVS and in the police car.

42

If the jury credits Plaintiff's version of events then Defendant Holmstrom's conduct would be considered objectively unreasonable. *See* Gattas v. City of Jersey City, No. , 2009 WL 5216973, at * 9 (D.N.J. Dec. 29, 2009) (holding that the defendant law enforcement officer's conduct was unreasonable because plaintiff suffered a medical injury, told the officer that he was pulling too hard on the handcuffs and complained that the handcuffs were too tight, causing his hands to feel numb); *see also* Cincerella v. Egg Harbor Twp. Police Dept., 2009 WL 792489 at * 11 (concluding that the defendant law enforcement officer's use of force was unreasonable because plaintiff testified that he told the officer "something popped" in his hand, the officer ignored plaintiff's requests to loosen the handcuffs and plaintiff sought medical treatment for an alleged injury).  On the other hand, if the jury concludes Plaintiff (1) exhibited hostility similar to her demeanor at CVS or in the police car or (2) that Defendant Holmstrom was unaware of Plaintiff's pain and requests for removal of the handcuffs, then Defendant Holmstrom would be entitled to qualified immunity as a matter of law.

With respect to the second prong of qualified immunity analysis, the Third Circuit has specifically held that "the right of an arrestee to be free from the use of excessive force in the course of his handcuffing" was a clearly established

43

constitutional right. <u>Kopec</u>, 361 F.3d at 778.  The Court,
therefore, concludes Plaintiff's Section 1983 excessive force
claim against Defendant Holmstrom may proceed.

    **C.   New Jersey Civil Rights Act**

    The New Jersey Civil Rights Act (hereinafter "NJCRA") was
modeled after 42 U.S.C. § 1983, and creates a private cause of
action for violations of civil rights secured under the New
Jersey Constitutions. <u>Slinger v. New Jersey</u>, No. 07-5561, 2008 WL
4126181, * 5-6 (D.N.J. September 4, 2008), rev'd on other grounds
366 Fed. Appx. 357 (3d Cir. 2010); <u>Armstrong v. Sherman</u>, No. 09-
716, 2010 WL 2483911, * 5 (D.N.J. June 4, 2010).  NJCRA provides,
in pertinent part, a private cause of action to

> [a]ny person who has been deprived of any substantive
> due process or equal protection rights, privileges or
> immunities secured by the Constitution or laws of the
> United States, or any substantive rights, privileges or
> immunities secured by the Constitution or laws of this
> State, or whose exercise or enjoyment of those
> substantive rights, privileges or immunities has been
> interfered with or attempted to be interfered with, by
> threats, intimidation or coercion by a person acting
> under color of law.

N.J.S.A. 10:6-2(c).  This district has repeatedly interpreted
NJCRA analogously to § 1983. *See* <u>Chapman v. New Jersey</u>, No. 08-
4130, 2009 WL 2634888, *3 (D.N.J. August 25, 2009) ("Courts have
repeatedly construed the NJCRA in terms nearly identical to its
federal counterpart"); <u>Slinger</u>, 2008 WL 4126181 at *5 (noting
NJCRA's legislative history, this district utilized existing §
1983 jurisprudence as guidance for interpreting the statute);

Armstrong, 2010 WL 2483911 at *5 ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983").  Therefore, the Court will analyze Plaintiffs' NJCRA claims through the lens of § 1983. *See* Hedges v. Musco, 204 F.3d 109, 121 n. 12 (3d Cir. 2000) (concluding that New Jersey's constitutional provision concerning unreasonable searches and seizures is interpreted analogously to the Fourth Amendment) (citing Desilets v. Clearview Reg'l Bd. of Educ., 627 A.2d 667, 673 (N.J. Super. Ct. App. Div. 1993) ("We are not persuaded that the New Jersey Constitution provides greater protection under the circumstances of this case than its federal counterpart. We note that in its *T.L.O.* opinion the New Jersey Supreme Court analyzed the search and seizure issue under the Fourth Amendment to the United States Constitution, and did not suggest that New Jersey's organic law imposed more stringent standards")); *see also* Norcross v. Town of Hammonton, 2008 U.S. Dist. LEXIS 9067 (D.N.J. Feb. 5, 2008) ("The New Jersey Supreme Court does not appear to have spoken on whether excessive force is a context where state law provides greater protection than does federal law.  This Court sees no reason to conclude that in the context of a claim for excessive force during an arrest, the standard under the New Jersey Constitution for evaluating those claims is different from that under the United States Constitution").

For the reasons expressed in connection with the Section

45

1983 analysis, summary judgment will be entered in favor of
Defendants City of Woodbury Police Department and Woodbury with
respect to Plaintiff's NJCRA claims.  Conversely, for the reasons
expressed in connection with the Section 1983 analysis, the Court
will deny Defendant Holmstrom's Motion for Summary Judgment with
respect to Plaintiff's NJCRA false arrest and excessive force
claims.

> **D.   False Arrest and Excessive Force Common Law Claims**
>
> > **1.   Defendants City of Woodbury Police Department and
> > City of Woodbury**

The Court concludes Defendants City of Woodbury Police
Department and Woodbury are immune from liability under the New
Jersey Tort Claims Act.  The NJTCA provides, "[a] public entity
is not liable for the acts or omissions of a public employee
constituting a crime, actual fraud, actual malice, or willful
misconduct." N.J.S.A. 59:2-10.  The Comment to this section
explains,

> This provision recognizes the existing law and public
> policy that a public entity should not be vicariously
> liable for such conduct of its employees.  In addition
> it adopts the concept noted in O'Connor v. Harms, et
> al., 111 N.J.Super. 22, 26-27, 266 A.2d 605 (App. Div.
> 1970) that:  "a public corporation such as a city or
> other public body, by reason of its being an artificial
> legal entity created by law to perform limited
> governmental functions, cannot entertain malice, as a
> public corporation."

Id.  Plaintiff's claim that Defendants City of Woodbury Police
Department and Woodbury are liable for Defendant Holmstrom's

conduct fails as a matter of law because Plaintiff's characterization of Defendant Holmstrom's actions satisfies the "willful misconduct" requirement for the City's immunity under the NJTCA. "Willful misconduct requires 'much more' than mere negligence," and it falls "somewhere on the continuum between simple negligence and the intentional infliction of harm." Alston v. City of Camden, 773 A.2d 693, 702 (N.J. 2001) (citations omitted). According to Plaintiff, Defendant Holmstrom violated her constitutional rights. She specifically contends that he arrested her without any legal authority and that he ignored her repeated requests to loosen the handcuffs. Because these averments assert much more than mere negligence, for the purposes of determining Defendants City of Woodbury Police Department and Woodbury's immunity, Plaintiff's contentions support that Defendant Holmstrom engaged in willful misconduct. Therefore, summary judgment will be entered in favor of Defendants City of Woodbury Police Department and Woodbury.[20]

### 2. Defendant Holmstrom

In addition to federal and state constitutional false arrest and excessive force claims, Plaintiff also asserts false arrest

---

[20] With respect to public entities, "the Act was clearly intended to reestablish a system in which immunity is the rule, and liability the exception." "When both liability and immunity appear to exist, the latter trumps the former." Fielder v. Stonack, 661 A.2d 231, 238-39 (N.J. 1995).

and excessive force claims under New Jersey common law. Defendant Holmstrom contends summary judgment should be entered on his behalf because he is entitled to good faith immunity under two provisions of the New Jersey Tort Claims Act (hereinafter "NJTCA").

The NJTCA provides that a "public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. § 59:3-3.  In ascertaining whether good faith immunity exists, the New Jersey Supreme Court opined that "[a] public employee either must demonstrate 'objective reasonableness' or that he behaved with 'subjective good faith.'" Alston v. City of Camden, 773 A.2d 693, 703 (N.J. 2001).  This defense, however, is unavailable when a public employee is liable for false arrest. Toto v. Ensuar, 952 A.2d 463, 470 (N.J. 2008) The New Jersey Supreme Court further clarified that "[t]he same standard of objective reasonableness that applies in Section 1983 actions also governs questions of good faith arising under the Tort Claims Act." Wildoner v. Borough of Ramsey, 744 A.2d 1146, 1153 (N.J. 2000).  Therefore, if the alleged tort and alleged constitutional violation arise out of the same conduct, and the Court concludes that no constitutional violation occurred because the public employee's actions were objectively reasonable, the NJTCA's good faith provision applies and bars prosecution of the tort claim.

Presently, the Court cannot conclude that NJSA § 59:3-3 provides immunity for Defendant Holmstrom's conduct.  As detailed in the 1983 section of this Opinion, disputed issues of material fact exist regarding reasonableness of Defendant Holmstrom's conduct.  Once the disputed issues are resolved, the Court can then conclude whether NJSA § 59:3-3's grant of immunity is applicable.

The NJTCA additionally provides that "[n]either a public entity nor a public employee is liable for . . . any injury caused by . . . a person resisting arrest or evading arrest." N.J.S.A. § 59:5-2.  This subsection is, however, inapplicable if the public employee's "conduct was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." Klemash v. Monroe Twp., No. 07-4190, 2010 WL 455263, at * 12 (D.N.J. Feb. 4, 2010) (quoting N.J.S.A. 59:3-14).

The Court must similarly conclude that immunity is also unavailable under NJSA § 59:5-2.  Disputed issues of material fact exist regarding whether Defendant Holmstrom's conduct constituted willful misconduct. See Edwards v. New Jersey, No. 08-5617, 2009 WL 3261951, at *4 - 5 (D.N.J. Oct. 7, 2009) ("[W]hether the public employees' acts were 'willful misconduct' is a question of fact") (quoting PBA Local No. 38 v. Woodbridge Police Dept., 832 F.Supp. 808, 830 (D.N.J. 1993)).  The Court will, therefore, deny summary judgment with respect to Defendant

49

Holmstrom's false arrest and excessive force common law claims.

## IV.   CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment [Doc. 18] will be granted in part and denied in part. Defendants City of Woodbury Police Department and Woodbury are awarded summary judgment on all of Plaintiff's federal and state constitutional and state common law claims.  The Court will also enter summary judgment in favor of Defendant Holmstrom regarding Plaintiff's improper seizure and abuse of process claims.  With respect to the federal and state constitutional and common law false arrest and excessive force claims against Defendant Holmstrom, the Court will deny summary judgment.

An appropriate Order will be entered.


Date:   June 29, 2011                      s/ Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.